UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NIKOLAOS PSARAKIS, et al.,

    Plaintiffs,

    v.

WORLD BUSINESS LENDERS INC, et al.,

    Defendants.

No. C 20-08868 WHA

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

    Plaintiffs Nikolaos and Panagiota Psarakis seek a temporary restraining order against the sale of their family home in California scheduled for December 17, 2020, at noon. A Fair Debt Collection Practices Act claim secures supplemental jurisdiction. 28 U.S.C. § 1367; 15 U.S.C. §§ 1692 *et seq.* For the reasons that follow, relief is **GRANTED**.

    According to the sworn declaration, plaintiffs, Greek immigrants with little English proficiency, fell prey to predatory lending, or at least to a predatory broker. They sought a mortgage on their family home and, through contacts in the Greek community, found defendant Pete Boudouvas, a self-styled mortgage broker. Boudouvas told plaintiffs to transfer title to their home to their butcher-shop business and secured them a supposedly weeks-long, high-interest (0.1917% daily compounding, or 69% annual) $645,000 loan, for the purposes, or so Boudouvas said, of obtaining quick approval for a traditional mortgage. After paying $3,000 nearly every other day from August 2018 to January 2019, totaling nearly $240,000, plaintiffs asked Boudouvas for the originally promised traditional mortgage.

    In April 2019, Boudouvas secured a second $615,000 loan at 12% annual interest for plaintiffs, of which $600,000 went toward paying off the prior loan. Unbeknownst to plaintiffs, the prior loan principal had skyrocketed, so several hundred thousand dollars remained due even after this payment. Boudouvas represented, however, that the first loan had been settled, so plaintiffs ceased payment. Plaintiffs paid on the second loan from April 2019

to April 2020, at which point Boudouvas told them to cease payment in anticipation of the elusive traditional mortgage. When such mortgage did not appear, plaintiffs reached out to other sources for financing and learned of the remainder of the first loan. Sometime after, the lender on the second mortgage began foreclosure proceedings and set the home for sale today, December 17 at noon (Xyntaras Decl., Dkt. No. 2-1).

Plaintiffs sued and applied for a temporary restraining order against the sale on December 14. A December 15 order directed service of defendants and set a hearing for December 17 at 8:00 a.m. At the hearing, both counsel for plaintiffs and counsel for Wayne R. Fricke, Trustee, et al., the lender for the second loan, appeared. The Court ordered relief on the record and this order follows.

A temporary restraining order requires plaintiffs to establish a likelihood of success on the merits, a likelihood of irreparable harm, that the balance of the equities tips in their favor, and that the public interest favors an injunction. In this circuit, as in others, where the balance of the equities tips sharply in plaintiffs' favor, they need only show a serious question on the merits. *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

It would be difficult to contest the irreparability of the impending harm. Plaintiffs will lose their home. California presumes that real property cannot be replaced with money; a family home even more so. *Cf. Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 473 (2008) (citing Cal. Civ. Code § 3387). The equities tip sharply in plaintiffs' favor. The home will be there in a few months to be sold at foreclosure if plaintiffs' claims fail. But it would present a dreadful challenge to reobtain the home, once sold, even if plaintiffs prevail on the merits. And, the public interest also tips sharply in plaintiffs' favor. No one would accuse the Bay Area winter of being cold enough to kill, as it might in many other parts of the country. But the public interest does not favor turning a family out onto the street this time of the year, particularly while a global pandemic rages and public health officials have warned all to stay indoors.

The propriety of a temporary restraining order here turns on the merits of plaintiffs' claims. Plaintiffs' papers and the complaint appear to state prima facie cases for breach of fiduciary duty and fraud at least against Boudouvas, the self-styled mortgage broker, for misleading them into a series of loans they did not want and which now threaten to dispossess them of their home. *See Wyatt v. Union Mort. Co.*, 24 Cal. 3d 773, 782–84, 598 P.2d 45 (1979); *Hodges v. County of Placer*, 41 Cal. App. 5th 537, 546–47 (2019); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990, 102 P.3d 268 (2004).

Taking these claims as established, however, any relief here runs more directly against the lender and the trustee for the pending sale, not Boudouvas as the broker. Though California does impose liability upon a broker or loan officer in conspiracy with a lender, plaintiffs have proffered in their papers and at the hearing no more than conclusory allegations tying Boudouvas' misconduct to the second lender, the Fricke trust. Indeed, counsel for the trust represents that his client has no relationship with Boudouvas or knowledge of his alleged misconduct conduct.

Nevertheless, significant questions going to the propriety of the pending sale appear. At the hearing, counsel for the trust acknowledged that a subrogation agreement had given the trust loan priority over the earlier loan and admitted it to be his understanding that the trust loan was for a rental property owned by a business, not a family home. Indeed, the notice of default accompanying plaintiffs' papers, recorded by the loan servicer Redwood Trust Deed Services, Inc., includes a declaration that:

> The requirements of Cal. Civil Code § 2923.5 do not apply because the loan is *not secured by a first mortgage or first deed of trust* that secures a loan, *or that encumbers real property*, described in Civil Code § 2924.15(a) which shall apply only to first lien mortgages or deeds of trust that are *secured by owner-occupied residential real property* containing no more than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(Dkt. No. 2-1 at 31) (emphasis added). Directly contradicting this, though, both plaintiffs' declaration and counsel represent that the home at issue *is* plaintiffs' primary residence.

3

"Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to 'assess' the borrower's financial situation and 'explore' options to prevent foreclosure." *Lueras v. BAC Home Loan Servicing, LP*, 221 Cal. App. 4th 49, 77 (2013).  Defendants' own documents concede noncompliance with Section 2923.5 in the foreclosure of plaintiffs' home, even though our facts indicate — regardless of any malfeasance on the trust or servicer's part — that Section 2923.5 *did in fact* apply.  "The only remedy for noncompliance with [Section 2923.5] is the postponement of the foreclosure sale." *Skov v. U.S. Bank Nat'l Ass'n*, 207 Cal. App. 4th 690, 696 (2012); *In re Turner*, 859 F.3d 1145, 1150 (9th Cir. 2017).

In sum, imminent harm looms in the loss of plaintiffs' family home.  They have raised significant questions regarding the propriety of the sale under California Civil Code Section 2923.5.  The balance of the equities tips sharply in their favor.  And, the public interest supports relief.  The pending foreclosure sale of the subject property is **ENJOINED**.

This relief is conditioned on plaintiffs posting a **$25,000 BOND** with the Court and tendering **ONE USUAL PAYMENT** to the lender by **DECEMBER 22 AT NOON**.  For all defendants who have not yet appeared, plaintiffs shall ensure that all defendants have been served with a summons, complaint, moving papers, and all the Court's orders in a manner consistent with Rule 4.  Though if a defendant has already accepted service by Rule 4, the parties may consent to service of later documents by other methods.

Plaintiffs' motion for preliminary injunction is due **JANUARY 7 AT NOON**.  Defendants' oppositions are due **JANUARY 21 AT NOON**.  A hearing is set for **JANUARY 28 AT 8:00 A.M.**  Each side shall be entitled to **ONE** fact deposition **OR ONE** reasonably tailored document production request.  Continued relief is conditioned on plaintiffs' cooperation.

**IT IS SO ORDERED.**

Dated:  December 17, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4